IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| TOMMY HAMILTON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:16-CV-128 |
| | § | |
| JOHN SEALY HOSPITAL, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Tommy Hamilton is an elderly federal prisoner (Federal Register Number: 39463-177) who was treated by the defendants while he was in the custody of the Texas Department of Criminal Justice ("TDCJ"). He has filed a complaint under 42 U.S.C. § 1983 alleging that the defendants left the tip of a catheter in his chest and deliberately concealed that information from him (Dkt. 1). The defendants have filed a motion for summary judgment (Dkt. 25), to which Hamilton has responded (Dkt. 27). The Court will also consider Hamilton's original complaint and its attachments to be part of the summary judgment record because Hamilton declared under penalty of perjury that the facts set forth in the complaint are true and correct (Dkt. 1 at p. 12). *See Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit."); *see also Davis v. Hernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[F]ederal

courts, this one included, have a traditional disposition of leniency toward *pro se* litigants.") (quotation marks omitted).

After reviewing all of the evidence submitted, the parties' briefing, and the applicable law, the Court concludes that the defendants' motion for summary judgment must be **GRANTED** for the reasons that follow.

## I.    BACKGROUND

The individual defendants in this case—Dr. David Beckles, a cardiothoracic surgeon; Dr. Smitha Oommen, an oncologist; and Dr. Techksell Washington, an oncologist—successfully treated Hamilton for lung cancer in 2011.[1] The cancer was discovered after a CT scan and a chest x-ray found a mass in Hamilton's upper right lung in December of 2010 (Dkt. 26-4 at pp. 76–77). The interpreting physicians, who are not defendants in this suit, recommended a "biopsy or repeat CT in three to six months" (Dkt. 26-4 at p. 77).

In early March of 2011, the Interventional Radiology Department of the University of Texas Medical Branch ("UTMB") performed a CT-guided biopsy of the mass (Dkt. 25-1 at p. 3; Dkt. 26-4 at pp. 68–69). During the procedure, a pneumothorax[2] developed, which required the placement of a catheter in Hamilton's chest for decompression (Dkt. 26-4 at p. 69). Unfortunately, while the catheter was being removed,

---

[1] Hamilton has also sued the John Sealy Hospital and the University of Texas Medical Branch, which runs John Sealy Hospital. Those entities are entitled to sovereign immunity, and Hamilton's claims against them are dismissed as barred by the Eleventh Amendment. *See Lewis v. University of Texas Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

[2] A pneumothorax is a collapsed lung (Dkt. 25-1 at p. 3). It is caused by air leaking into the space between the lung and the chest wall, and it is usually treated by insertion of a flexible tube or needle between the ribs to remove the excess air. *See* http://www.mayoclinic.org/diseases-conditions/pneumothorax/home/ovc-20179880.

Hamilton, according to his medical records, "jerked backwards[;]" and the catheter tube broke while the tip of the catheter was still inside Hamilton's chest (Dkt. 26-4 at pp. 62–63). After using x-rays to locate the catheter tip, the Interventional Radiology Department realized that it "ha[d] no way of safely retrieving th[e] catheter" (Dkt. 26-4 at p. 53). Surgery would be necessary, so the Interventional Radiology Department consulted with UTMB's Cardiothoracic Surgery Department (Dkt. 26-4 at p. 53). Meanwhile, the results of the CT biopsy were coming back; and they were consistent with non-small-cell lung cancer, making it clear that the Cardiothoracic Surgery Department would have to perform a surgical resection of the right lung (Dkt. 26-4 at p. 129). Since the catheter tip would also have to be removed surgically, the cardiothoracic surgery team was then faced with the choice of whether to remove the catheter immediately or leave it in Hamilton's chest temporarily and remove it during the resection—in other words, the choice of whether to perform two surgeries or only one (Dkt. 25-1 at p. 3). The doctors chose to perform one surgery (Dkt. 26-4 at p. 129). The plan of care was explained to Hamilton, who verbalized understanding of the plan and agreed to it (Dkt. 26-2 at pp. 51, 65–66).

In his affidavit, Dr. Beckles, who ultimately performed the surgery, explains that:

> It was made clear to [Hamilton] that the catheter (which is FDA approved to be placed within the chest cavity for sometimes an extended period of time as indicated) was safe to remain in place until the time of his lung cancer surgery. Other pre-operative studies were pending prior to surgical resection of the cancer.
>
> . . .
>
> Redo operations on the chest have a higher complication rate and mortality and is [sic] associated with worse cancer survival rates. The patient made his decision that he wanted to have surgery ONCE and not twice.

> Therefore, we decided to remove the catheter at the same time as surgical removal of the cancer to offer the patient the most benefit with the smallest risks as possible and he agreed.
>
> . . .
>
> The benefits of completing the oncological workup clearly outweighed the risks of waiting [until the resection to remove the catheter].
> Dkt. 25-1 at pp. 3–5 (all-caps emphasis in original).

On April 11, 2011, Dr. Beckles performed the surgical resection and, during the same procedure, removed the catheter tip from Hamilton's chest (Dkt. 26 at pp. 1094–97). There were no complications (Dkt. 26 at pp. 1094–97), and in his affidavit Dr. Beckles notes that Hamilton survived "one of the . . . deadliest cancers" (Dkt. 25-1 at p. 5). A picture of the removed catheter tip is included in the summary judgment record (Dkt. 30-1 at p. 33). In all, the catheter tip spent five weeks in Hamilton's chest.

## II.   THE PLRA, SUMMARY JUDGMENTS, AND QUALIFIED IMMUNITY

### A.   The PLRA

The complaint in this case is governed by the Prison Litigation Reform Act (the "PLRA"). Upon initial screening of a prisoner civil rights complaint, the PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Hamilton, proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is

"frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

Hamilton proceeds *pro se* in this case. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *Haines v. Kerner*, 404 U.S. 519 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' *Estelle* [*v. Gamble*, 429 U.S. 97, 106 (1976)], and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (observing that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). The Supreme Court has clarified that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.    Rule 56

The defendants have moved for summary judgment. Federal Rule of Civil Procedure 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, the Court must determine whether the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Id.* at 322–23.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an absence of a genuine issue of material fact. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The movant, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The movant may meet its burden by pointing out the absence of evidence supporting the non-movant's case. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the movant meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (citations omitted).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from those facts must be reviewed in the light most favorable to the non-movant. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). However, factual controversies are resolved in favor of the non-movant "only when both parties have submitted evidence of contradictory facts." *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004) (citation and quotation marks omitted). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A & B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the non-movant must present specific facts which show the existence of a genuine issue concerning every essential component of its case. *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003). In the absence of any proof, the Court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See Love v. Nat'l Medical Enterprises*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F.Supp.2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat

summary judgment where the evidence in the record is to the contrary. *Smith v. Southwestern Bell Tel. Co.*, 456 Fed. App'x 489, 492 (5th Cir. 2012) ("[W]e have repeatedly held that self-serving statements, without more, will not defeat a motion for summary judgment, particularly one supported by plentiful contrary evidence."); *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001); *In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Lastly, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment; evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). Although Hamilton is proceeding pro se, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a pro se party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992).

### C. Qualified Immunity

The defendants' motion invokes qualified immunity (Dkt. 25 at p. 17). In civil rights actions such as this one where the non-movant is suing government officials, the issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the qualified immunity defense is raised, the burden

shifts to the non-movant to rebut it. *Id*. All inferences are drawn in the non-movant's favor. *Id*.

The qualified immunity analysis is complex and intensely fact-specific. The Court begins by applying the two prongs of the qualified immunity defense, though the Court may analyze the prongs out of order. The first prong is the question of whether the official's conduct violated a Constitutional right of the plaintiff. *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The second prong is the question of whether the Constitutional right was clearly established at the time of the violation. *Id*. For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id*. at 236–37.

If the plaintiff satisfies both prongs—i.e., if the official's actions violated a clearly established Constitutional right—the Court then asks whether qualified immunity is nevertheless appropriate because the official's actions were objectively reasonable in light of law that was clearly established at the time of the disputed action. *Callahan*, 623 F.3d at 253. Whether an official's conduct was objectively reasonable is a question of law for the Court, not one of fact for the jury. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). An official's actions must be judged in light of the circumstances that confronted him and the facts that were available to him, without the benefit of hindsight. *Graham v.*

*Connor*, 490 U.S. 386, 396–97 (1989); *Callahan*, 623 F.3d at 253; *Lampkin v. City of Nacogdoches*, 7 F.3d 430, 435 (5th Cir. 1993).

Qualified immunity "establishes a high bar"—*Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013)—that protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Essentially, a plaintiff must demonstrate that no reasonable official could have believed that his actions were proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

## III. PRISONERS AND MEDICAL CARE

Hamilton seeks relief under 42 U.S.C. § 1983 for what he says was Constitutionally deficient medical care. A prisoner may succeed on a claim under 42 U.S.C. § 1983 for inadequate medical care only if he or she demonstrates "deliberate indifference to serious medical needs" on the part of prison officials or other state actors. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The conduct alleged must "constitute an unnecessary and wanton infliction of pain" or "be repugnant to the conscience of mankind." *Id.* at 104–06 (quotation marks omitted). A prison official acts with the requisite deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The deliberate-indifference test has both an objective prong and a subjective one. The prisoner must first prove objective exposure to a substantial risk of serious harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). To then prove subjective deliberate indifference to that risk, the prisoner must show both: (1) that the defendant

was aware of facts from which the inference of an excessive risk to the prisoner's health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed. *Farmer*, 511 U.S. at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). This is an "extremely high standard to meet"—*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)—and, absent exceptional circumstances, it is not met by an incorrect diagnosis, unsuccessful medical treatment, acts of negligence, medical malpractice, or a prisoner's disagreement with his medical treatment. *Id.*; *Gobert*, 463 F.3d at 346. Rather, the prisoner must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotation marks omitted).

"Deliberate indifference is not established when medical records indicate that the plaintiff was afforded extensive medical care by prison officials." *Brauner v. Coody*, 793 F.3d 493, 500 (5th Cir. 2015) (quotation marks and brackets omitted). The Constitution does not require that prisoners receive optimal care, and the fact that a prisoner's medical treatment "may not have been the best that money could buy" is insufficient to establish a Constitutional claim. *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992); *see also Gobert*, 463 F.3d at 349 ("[D]eliberate indifference exists wholly independent of an optimal standard of care."); *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978) ("[The] plaintiff stated that he had not received 'optimum' or 'best' medical treatment. Were this the legal standard, a trial of the issues might be required.").

At bottom, the deliberate-indifference standard is designed to be stringent enough to separate acts or omissions that amount to intentional choices from those that are merely unintentionally negligent oversights. *Southard v. Tex. Bd. Of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997). To that end, it draws on the test for "subjective recklessness" used in criminal law, which "generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware" and does not permit such a finding based on mere "failure to alleviate a significant risk that [the person] should have perceived but did not[.]" *Farmer*, 511 U.S. at 836–40.

## IV.  HAMILTON'S CLAIMS

In light of the information contained in his medical records, Hamilton's claims against the defendants are, frankly, difficult to understand. What the claims apparently boil down to is that Hamilton, for some reason, thinks that Dr. Beckles left the catheter tip in his chest (Dkt. 1 at pp. 3–4). Hamilton presents no evidence to support this belief apart from his own statements, and the sole basis for those statements is evidently Hamilton's misreading of his own medical records—Hamilton has attached a few pages of his medical records (specifically, clinic notes signed by Dr. McKnight and Dr. Oommen) to his complaint, and those records mention the catheter. However, the record excerpts relied on by Hamilton predate the catheter tip's removal, so they do not provide any evidence that the catheter tip is still inside Hamilton's body (Dkt. 1 at pp. 13–15). And to the extent that Hamilton is trying to say that the defendants should have removed the catheter tip immediately instead of waiting until the surgical resection, his claims fail because the decision to perform one surgery instead of two was clearly based on the

defendants' exercise of their medical judgment. An inmate's simple disagreement with the exercise of medical judgment does not state a claim under the Eighth Amendment. *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). In the end, there is simply no evidence that any of the defendants showed deliberate indifference to Hamilton's medical needs.

Hamilton has also sued the defendants under 42 U.S.C. § 1985 and 42 U.S.C. § 1986. Section 1985 creates a private civil remedy for conspiracies to interfere with civil rights, including conspiracies to prevent federal officers from performing the duties of their offices by force, intimidation, or threat; conspiracies directed at the right of participation in federal judicial proceedings; conspiracies to deprive any person or class of persons of the equal protection of the laws; and conspiracies aimed at preventing a person from lawfully voting. *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). Hamilton has not provided any evidence supporting his claim under Section 1985 and seems to have abandoned it, and in any event it is hard to see any possible way Section 1985 could apply to these facts. The Section 1985 claim fails, and with it the Section 1986 claim, which requires a valid Section 1985 claim to be viable. *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

The defendants are entitled to qualified immunity, and their motion for summary judgment is granted.

## V.   CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1. The defendants' motion for summary judgment (Dkt. 25) is **GRANTED**, and all claims against them are dismissed with prejudice.

2. Any other pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties.

SIGNED at Galveston, Texas, on _____ July 6 _____, 2017.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE